UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**Vincent R. Waggoner,**

    Plaintiff,

v.

**Joan Fabian,**

    Defendant.

Civil No. 06-1731 (DSD-JJG)

**REPORT
AND
RECOMMENDATION**

JEANNE J. GRAHAM, United States Magistrate Judge

The above matter is before the undersigned for resolution of dispositive motions. Plaintiff Vincent Waggoner is proceeding on his own behalf. Defendant Joan Fabian, named in her capacity as Commissioner of the Minnesota Department of Corrections (the Commissioner), is represented by Mark B. Levinger, Assistant Minnesota Attorney General.

Mr. Waggoner (Waggoner) asserts that state correctional officials violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment. He claims that when these officials conducted a chemical dependency assessment, they improperly concluded that he needed treatment. He also claims these officials improperly placed him at a county jail rather than a state prison, thus denying him access to programs that are required under state law.

The Commissioner here moves for summary judgment (Doc. No. 18). In the papers against this motion, Waggoner also interposes his own motion for summary judgment (Doc. No. 26). These motions are referred to this Court for a report and recommendation in accordance with 28 U.S.C. § 636(b) and Local Rule 72.1(b).

**A.     Standard of Review**

A party is entitled to summary judgment where the record shows that there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Cordry v. Vanderbilt Mortgage & Finance, Inc.*, 445 F.3d 1106, 1109-10 (8th Cir. 2006). An issue of material fact exists, and summary judgment is inappropriate, where the evidence would give a reasonable jury cause to return a verdict for the nonmoving party. *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 873 (8th Cir. 2005).

In this context, all reasonable inferences are taken in favor of the nonmoving party. *Johnson v. Metropolitan Life Ins. Co.*, 437 F.3d 809, 812-13 (8th Cir. 2006). If the nonmoving party fails to present evidence supporting a necessary element of a claim, then that claim cannot survive summary judgment. *Beyer v. Firstar Bank, N.A.*, 447 F.3d 1106, 1108 (8th Cir. 2006).

**B.     Exhaustion**

The Commissioner first argues that, because Waggoner failed to pursue his concerns through jail and prison grievance systems, he did not exhaust his administrative remedies and cannot proceed with this litigation.

The record shows that three separate grievance systems may be applicable here. Minnesota prisons have a regular grievance system for handling most prisoner complaints. (Exh. 1.)[1] They have a separate grievance procedure for challenging chemical dependency assessments. (Exh. 2.) Minnesota jails maintain their own grievance systems. Minn. R. 2911.2900.

---

[1] Exhibits are cited in an appendix at the end of this report and recommendation.

The only grievance procedure requiring detailed discussion is that for chemical dependency assessments. To challenge the assessment, a prisoner first must submit a grievance to the prison's director of psychological services. If this result is not satisfactory, the prisoner must then appeal to the director of behavioral health for the Minnesota Department of Corrections. (Exh. 2 at 2-3.)

Waggoner was initially incarcerated at the Minnesota prison in St. Cloud in November 2005. (Exh. 3 at 1.) In accordance with ordinary policy for incoming prisoners, Waggoner was assessed for chemical dependency issues in December 2005. That assessment found that Waggoner required treatment. (Exh. 4 at 1.) Waggoner properly challenged this decision by submitting a grievance to Bruce Hedge, the director of psychological services at the St. Cloud prison. (*See* Exh. 5.)

Correctional officials allegedly transferred Waggoner from the St. Cloud prison to Kandiyohi County Jail on January 24, 2006. (Exh. 6 at 5.) Hedge denied Waggoner's challenge to his chemical dependency assessment by a memorandum on February 1, 2006. (Exh. 5.)

Waggoner asserts that, once he was moved to the jail, he no longer had access to grievance forms and so he was unable to pursue his complaints further. (Exh. 7 at 2, 6, 8.) The Commissioner counters that Waggoner had access to prison grievance procedures through a prison case worker, and that he could also have taken advantage of the jail's own grievance procedures. But the record lacks evidence that would substantiate these claims.

Turning to the analysis, the requirement to exhaust administrative remedies comes from the Prisoner Litigation Reform Act (PLRA), which provides in relevant part,

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies

as are available are exhausted.

42 U.S.C. § 1997e(a). So where a prisoner does not exhaust administrative remedies, by not lodging a grievance about an issue in accordance with prison regulations, the prisoner may not seek relief in federal courts. *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000). Exhaustion is an affirmative defense, which means that when prison officials raise the issue, they have the burden to prove that the prisoner did not properly exhaust claims. *Jones v. Bock*, 127 S.Ct. 910, 921 (2007); *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005).

Under its plain language, the PLRA only requires exhaustion of remedies "as are available." The Eighth Circuit examined this language in *Miller v. Norris*. 247 F.3d 736 (8th Cir. 2001). The court determined that, where prison officials prevent a prisoner from using grievance procedures, those procedures are not "available." So a prisoner's failure to complete grievance procedures, for a reason such as lack of access to forms, does not preclude a finding of exhaustion. *Id.* at 740.

The Commissioner correctly notes that Waggoner did not fully pursue his complaints under jail and prison grievance procedures. If the record was limited to this concern, there would be no dispute Waggoner failed to exhaust his remedies. He did not fully appeal his chemical dependency assessment, and he did not submit grievances regarding any other issues in this litigation.

But Waggoner has alleged that, after moving to the jail, he lacked access to grievance forms and could not pursue his complaints. The Commissioner, though bearing the burden of proof, has not presented evidence to rebut Waggoner on this point. When reasonable inferences are taken in Waggoner's favor, the record shows that the grievance procedures were not available to him.

4

The result is an issue of material fact regarding whether Waggoner exhausted administrative remedies. The Commissioner is, therefore, not entitled to summary judgment on this basis.

**C.     Constitutional Violations**

On the merits of his claims, Waggoner argues that prison officials violated the Due Process Clause and the Equal Protection Clause. Though the parties' arguments are primarily devoted to the question of due process, this Court will briefly address the equal protection claim.

Where a plaintiff asserts a violation of equal protection, but does not claim membership in a protected class, there must be a showing the plaintiff was treated differently from others similarly situated. *See Barstad v. Murray County*, 420 F.3d 880, 885 (8th Cir. 2005); *cf. Shortino v. Wheeler*, 531 F.2d 938, 939 (8th Cir. 1976) (per curiam) (holding that, where the plaintiffs failed to allege any improper classification or discrimination, there is no violation of equal protection). Waggoner does not make this showing, so his equal protection claim fails.

In order to establish a violation of due process, a plaintiff must first show an interest in life, liberty, or property subject to the protections of due process. *Stauch v. City of Columbia Heights*, 212 F.3d 425, 429 (8th Cir. 2000). Prisoners have substantial constraints on their liberty interests, far less than for ordinary citizens. So when correctional officials move a prisoner to another facility, *Moorman v. Thalacker*, 83 F.3d 970, 972 (8th Cir. 1996), or require a particular type of treatment for a prisoner, *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 668 (8th Cir. 1996), no liberty interest ordinarily attaches.

Waggoner counters that the decisions of correctional officials violate or frustrate state law, and for this reason, he has a protected interest. If state law places explicit and mandatory limits on the authority

of state officials, and those officials violate that authority, a liberty interest will attach.[2] Where state law lacks explicit limits, however, there is no liberty interest and it is inappropriate for a court to direct compliance with that law. *Forrester v. Bass*, 397 F.3d 1047, 1055, 1056 (8th Cir. 2005).

Although Minnesota law contemplates substance abuse treatment for prisoners, Minn. Stat. §§ 241.40, 241.416, it does not mandate any particular procedures or course of treatment during the term of imprisonment, Minn. Stat. § 241.415. There are no Minnesota laws or regulations placing explicit limits on the authority of prison officials to assess and conduct substance abuse treatment for prisoners. No liberty interest, therefore, can arise out of the substance abuse program.

Waggoner recites several statutes that purportedly supply explicit limits on prison officials' administration of the substance abuse program. One is Minn. Stat. § 244.03. He relies on the part of the statute that states, "The commissioner [of corrections] shall provide appropriate mental health programs . . . for inmates." Viewed in isolation, it is reasonable to suggest the word "shall" signals a mandatory obligation, though the word "appropriate" suggests that the Commissioner has some discretion.

But the statute then goes on to state,

> The selection, design and implementation of programs under this section shall be the sole responsibility of the commissioner, acting within the limitations imposed by the funds appropriated for such programs.

---

[2] Relying on the Eighth Circuit decision in *O'Connor v. Jones*, among other authorities, the Commissioner argues for immunity under the Eleventh Amendment. The court ruled, in accordance with the principles of state sovereignty provided by the Eleventh Amendment, that a person cannot bring federal suit against a state simply because it violates its own law. 946 F.2d 1395, 1399 (8th Cir. 1991). Although this rule is generally correct, it cannot embrace liberty interests that arise when state law places mandatory limits on the authority of state officials. For this reason, it is not useful to examine the issue of Eleventh Amendment immunity.

> No action challenging the level of expenditures for programs authorized under this section, nor any action challenging the selection, design, or implementation of these programs . . . may be maintained by an inmate in any court of this state.

This text strongly qualifies the Commissioner's obligation to provide mental health programs. It makes it plain that, because funds are limited, the Commissioner has discretion to limit the selection of programs. And it makes it clear that prisoners cannot challenge how the Commissioner exercises this discretion. The statute does not expressly limit the authority of the Commissioner, and for this reason, it does not create a liberty interest. *Cf. State ex rel. McMaster v. Young*, 476 N.W.2d 670, 672 (Minn. App. 1991).

Citing Minn. Stat. § 244.055, Waggoner adds that the Commissioner must provide substance abuse treatment no later than 160 days after the term of imprisonment begins. But this requirement only attaches when a prisoner meets certain specific criteria. Because Waggoner is imprisoned for first degree burglary, he does not qualify for substance abuse treatment under this statute. *See* Minn. Stat. § 244.055 subd. 2(6) (excluding those convicted of violent crimes); Minn. Stat. § 609.1095, subd. 1(d) (defining first-degree burglary, under Minn. Stat. § 609.582, subd. 1, as a violent crime).

Waggoner also asserts that, under Minn. Stat. § 169A.70, there are mandatory standards for the prison officials making substance abuse assessments. This statute requires counties to conduct chemical assessments of persons who commit certain drunk driving offenses. It does not affect the authority of, or supply procedures for, prison officials who perform substance abuse assessments. So this statute does not alter the result here.

Minnesota law on the placement of prisoners is chiefly provided by Minn. Stat. § 609.105, which requires the Commissioner to

7

>determine the place of confinement in a prison, reformatory, or other facility of the Department of Corrections established by law for the confinement of convicted persons[.]

Minn. Stat. § 609.105, subd. 2. Where the prisoner is convicted of a felony and has a remaining term of imprisonment exceeding 180 days, however, the statute does not mandate a particular place of confinement. Minn. Stat. § 609.105, subd. 1b.

With the agreement of county authorities, the Commissioner may hold prisoners at a county jail. *Cf.* Minn. Stat. § 641.25. Consistent with this authority, the Commissioner has often placed prisoners at county jails. (Exh. 3 at 2.) Once again, Minnesota law lacks any express direction that would prevent the Commissioner from doing so. For this reason, no liberty interest attaches to this decision either.

Arguing that the Commissioner is forbidden from placing convicted felons into county jails, Waggoner appears to invoke Minn. Stat. § 609.105, subds. 1 and 3. These provisions indicate that where a convicted felon has less than 180 days of imprisonment remaining, or where any person is sentenced to a term of less than 180 days, that person must be placed in a county jail or workhouse. Though they set out circumstances where placement in a jail might be required, these provisions do not prevent the Commissioner from placing prisoners in county jails under other circumstances. So this argument does not alter the outcome here.

Waggoner generally suggests that, because he was transferred to a jail and denied access to substance abuse treatment programming, he was disqualified from work release and other incentive programs. Regarding work release, the Commissioner responds that Waggoner was disqualified due to his prior felony convictions, rather than his substance abuse treatment. (Exh. 3 at 2.)

This Court notes that, because work release privileges are committed to the discretion of the Commissioner, no liberty interest attaches in any case. *See* Minn. Stat. §§ 241.26, subd. 1; 244.065. And Waggoner does not directly challenge his exclusion from this or any other program. His claims are limited to the jail placement and the substance abuse assessment. There being no liberty interest underlying either of these claims, any issues regarding his access to other programs are immaterial.

Because Waggoner's complaints are not founded on a recognized liberty interest, he cannot advance his claims for violation of due process. These claims fail as a matter of law, and therefore, it is appropriate for the Commissioner's motion for summary judgment to be granted.

**D.    Conclusion and Recommendation**

The record shows an issue of material fact whether Waggoner exhausted his claims before bringing this litigation. For this reason, the Commissioner is not entitled to summary judgment for Waggoner's purported failure to exhaust. But his claims do not involve protected liberty interests, and therefore, his claims for violation of due process fail as a matter of law. This Court accordingly concludes that his motion for summary judgment should be denied and that the Commissioner's motion for summary judgment should be granted.

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1. The Commissioner's motion for summary judgment (Doc. No. 18) be **GRANTED.**

2. Waggoner's motion for summary judgment (Doc. No. 26) be **DENIED.**

3. All claims in this matter be **DISMISSED WITH PREJUDICE.**

4. This litigation be dismissed in its entirety and judgment entered.

Dated this 26th day of July, 2007.             s/Jeanne J. Graham

JEANNE J. GRAHAM  
United States Magistrate Judge

# NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by August 14, 2007. A party may respond to the objections within ten days after service. Any objections or responses filed under this rule shall not exceed 3,500 words. The District Court shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.

# APPENDIX

Exh. 1    Decl. of K. Ebeling, Feb. 14, 2007, Exh. 1 (Dep't of Corrections, Policy 303.101).

Exh. 2    Aff. of J. Kill, Feb. 14, 2007, Exh. 1 (Dep't of Corrections, Policy 500.308).

Exh. 3    Decl. of R. Collier, Feb. 12, 2007.

Exh. 4    Decl. of J. Spies, Feb. 14, 2007.

Exh. 5    Decl. of J. Spies, Feb. 14, 2007, Exh. 1 (Memo. of B. Hedge, Feb. 1, 2006).

Exh. 6    Compl.

Exh. 7    Pl.'s Memo. of Mar. 21, 2007 (Doc. No. 26).